Good morning, may it please the court. Christopher Stender for the petitioner, Katya Escobar. I'd like to reserve two minutes of my time for rebuttal. Despite the Board of Immigration Appeals holdings rejecting the imputation of a parent's lawful statuses, lawful status for purposes of Section 240 A.A.1 of the Immigration and Nationality Act, that was the ruling of Madam Escobar, and for purposes of Section 240 A.A.2 of the Act, Madam Ramirez Vargas, the underlying analysis of common law concepts, congressional intent and statutory analysis provided by the Ninth Circuit in Cuevas-Gaspar relevant to Section 240 A.A.2 is no less compelling as it relates to imputation for purposes of Section A.1 of the Immigration and Nationality Act. Now, I'm third up here in oral argument, and I've had the ability to sit through and listen to prior counsel and also government counsel, so I'm restructuring my argument here a little bit. What I think is important, having had listened to the argument, is whether or not this court is bound by Grant X or not. Having practiced in this area for over 20 years, I've seen recently the Board of Immigration Appeals consistently cite to Grant X in an attempt to try to overrule subsequent Ninth Circuit and perhaps other circuits, but Ninth Circuit precedent when it makes a decision after the Ninth Circuit has ruled on a case. I do not think Grant X is relevant and is not implicated in this case for a couple of reasons. I think the most compelling reason is the fact that there is no gap for the agency to fill here. Why is there no gap? Because you have 33 years of prior consistent holdings from the Board of Immigration Appeals and from the Ninth Circuit consistently holding that a child may impute from the parent. That has been the law in the circuit since 1993 when Lepi-Gatron came out. The Board has cited published decisions from 1975, 1988, 1980, and the way this court cites to that prior Board precedent when it makes its ruling in Cuevas-Gaspar and holds looking at congressional intent, looking at common law concepts, and looking at the Board's own precedent saying that you've already always let children impute domicile, residence, and other legal concepts from a parent into a child for purposes of the Immigration Act, so it's perfectly consistent to hold in Cuevas-Gaspar that it's permissible under the statute, and that's what the Cuevas court did. I seem to recall some specific language in the DHS case that refers to instances where the agency has changed its position, its prior position, and still Grand Ex applies. You know what I'm talking about? You're talking about the oil brief that was filed in this matter? I'm talking about the opinion of Grand Ex in the DHS. I couldn't speak to that. It talks about agencies change of position, still binding. What I recall was the distinction that the Board has tried to make is that there's a difference now in the cancellation statute. They talk about residence, and before there was more of a common law concept under the 212C statute regarding domicile, and I think that's where the Board tried to make the distinction. I may be not... That's all right. Go ahead. Proceed with your argument. Okay. Therefore, we believe that Grand Ex is not implicated in this matter. If it is implicated and Grand Ex would apply, well, as I've already argued, there's a consistent chain of decisions already filling that gap. Now, in the post-decision matter of Escobar, the Board, without discussing its prior precedent, sought to overrule that prior precedent without consideration. It does try to dismiss it at a footnote and say, well, when we're trying to use imputation for these other circumstances, we really don't need to use it for cancellation purposes, but it doesn't really involve in any kind of analysis, and it really doesn't speak to the decision made in the Ninth Circuit under Cuevas-Gaspar and go through the whole litany of items that the Ninth Circuit did, the common law concepts, congressional intentions, statutory analysis, and prior BIA Ninth Circuit precedent in arriving at its decision. Also, in its subsequent decision matter of Ramirez-Vargas, it seeks to specifically overrule the Ninth Circuit's holding in Cuevas-Gaspar, even within the circuit, and it does so seeking to rely on Grand Ex. I think, as the Court has already pointed out, that is problematic, since this Court has already spoken in a series of rules specifically in a subsequent agency decision. The facts of our case in Escobar are really not in dispute. The petitioner became a lawful permanent resident on February 15, 2003. The notice to appear in the charging document was issued August 12, 2006. Thus, under the stop-time rule of the statute, the petitioner respondent had less than both the five years and the seven years necessary for cancellation of removal. Under Cuevas-Gaspar, which the immigration judge did find binding on her, she did find that the petitioner had the seven years. However, and she specifically points out that she thought this is problematic and thought the Board would probably uphold her decision, but the Ninth Circuit might think otherwise, she found that she could not impute the five years from the petitioner's mother to the petitioner in order for her to qualify for cancellation of removal. Under the facts, the petitioner's mother became a lawful permanent resident on March 3, 1992, and the petitioner did not turn 21 until March 28, 1999. Thus, the petitioner was an un-emancipated minor for seven years prior to her turning 21, but she had the seven years completed after her mother became a lawful permanent resident. Under Cuevas-Gaspar, the petitioner has satisfied the seven-year requirement under Section 248.82 of the Immigration Act. As to the five-year requirement under A1, the petitioner's mother had five years admission as a lawful permanent resident by 1997, already completed, when the petitioner was still 19 years old. The Immigration Act does define child. That's in Section 101B of the Immigration and Nationality Act. Child is defined as an unmarried person under 21 years old. We would request that the court look at her age up until the age of 21 since that is the definition of child in the Act. And I think that is a reasonable interpretation, and it's quite clear on its face. What I think important language in Cuevas-Gaspar is the court specifically states, just as we accord less deference to an agency interpretation that conflicts with an earlier, consistently held agency view, we also do not defer to an agency interpretation that frustrates the Cuevas-Gaspar analysis, and they find, and I think that this is, there was some foresight here because this is exactly what the board is trying to do right now, is trying to issue new precedent afterwards, and that precedent is frustrating the policy of Congress that the Ninth Circuit specifically considered in the Cuevas-Gaspar decision. The Cuevas-Gaspar court noted the following reasons for its holding. It gave a high priority to lawful permanent parents and their children in immigration law. For example, a parent's status, intent, and state of mind is imputed to the parent's un-emancipated minor children in many areas of the Immigration Act, including asylum, grounds of inadmissibility, and legal residency status. The Cuevas court also looked at the unremarkable common law concept that a parent's domicile follows that of his or her parents. Also that the BIA commonly imputes a parent's abandonment of permanent residence status to the parent's minor children. And the Cuevas-Gaspar court noted, and has also been discussing prior arguments here before the court today, because the BIA's interpretation is unreasonable, the Cuevas court stated we need not defer to it. That was the main argument I think would be binding on this panel. Another reason that the Cuevas court looked at was Congress, in enacting the cancellation of removal statute, imposed a seemingly less onerous residency requirement on non-permanent residents, requiring only that the alien had been physically present in the United States. There's been some subsequent published decisions extending that further, and the Cuevas court looked at that as another reason why it was reasonable to defer to the Cuevas court. To impute from the parent to the child. The conclusion I'd like to make in my argument, as far as my first petition for review, is that the petition is asking this court, consistent with common law concepts, congressional intent, and statutory analysis, and also, and I think quite importantly, the prior precedent of this court and of the board itself, to find a petitioner eligible to apply for cancellation of removal. She made that application, there was a hearing, there's specific findings, the facts of ESCOBAR put the issue squarely before the court, whether or not it is permissible to impute the five-year element for cancellation of removal for this petitioner. We would argue, consistent with previous ESCOBAR, in that the seven-year requirement can be imputed from a parent to a child, it's certainly reasonable for the court to defer to the parent. What do you say about the DHS decision, which the court held that it was not bound by a prior Ninth Circuit precedent, after Brand X, because of the change in the position of the DIA? Are you familiar with that case? I think I've, well, I think in general I've already argued that it's somewhat problematic, and that Brand X has been said repeatedly by the Board of Supervisors, and notwithstanding, you know, circuit decisions in this matter, now we get a first crack at it. I think what I'm trying to distinguish... Talking about a different point. The question is whether this panel is bound by Coitus Gaspard because it's Ninth Circuit precedent. It seems to me that the DHS case addresses that issue. It says the later panel is not bound if there's an intervening BIA decision which is binding under Brand X. Well, it just, our original point is Brand X is not implicated here, but if it is implicated, the Ninth Circuit has specifically already found in the Coitus Gaspard case that the BIA's interpretation is unreasonable, so it already considered the points put forth in Manovesco Bar when it decided Coitus Gaspard, and found that that interpretation would be unreasonable. Nonetheless, the Board went out and made that interpretation subsequently in a published decision. I think the Ninth Circuit is bound by a prior panel decision, but even if it's not, there are those two good reasons not even to look at Manovesco Bar as binding on this panel. I have three minutes left. I think I'll reserve the balance of my time for rebuttal if there are no further questions. Thank you. Good morning, Your Honors. Carol Federighi for Respondent, the Attorney General on this matter. Your Honors, first of all, I don't think the court needs to reach the issue of the validity of Coitus Gaspard. Even assuming the continued validity of Coitus Gaspard, we've distinguished that case from the present case and issue in our brief, and the court can rule in our favor without finding Coitus Gaspard no longer binding. If, however, the court finds that Coitus Gaspard requires imputation in this case, then it would have to address whether that case is still valid after the Board's interpretation in Ramirez-Vargas. And Your Honor is correct, Judge Schwarzer, that the Gonzales v. DHS case, this Court did apply Brand X to find that a previous let's see, it had previously found a Board agency position unreasonable. And I discussed this on page 31 of my brief. And in Gonzales v. DHS, the Court did decide that the Board's subsequent decision, it was going to defer to that even though it had found a previous Board position unreasonable. So Brand X would require the same results here. Since the Board has now issued a published decision on this imputation issue in both Escobar and Ramirez-Vargas, Ramirez-Vargas specifically addressing the Coitus Gaspard part of the statute, the Court should follow Brand X and Gonzales v. DHS and find that the new Board interpretation is entitled to deference and should be the new interpretation applied by this Court. The BIS decision in Escobar is unreasonable. What are the limits on the ability of the Court to find that a BIS decision is unreasonable? What does it mean to say it's unreasonable or it's not unreasonable within the context of Brand X? That word gets thrown around, but where's the standard for its application? I don't think, in this case, I don't think we need to reach the extreme limits of that determination. I don't think, in this case, the Board should be able to find that the Board's determination in Escobar or what it was applying before in Coitus Gaspard was unreasonable in the sense that it's not entitled to deference. Now, at this point, when the Board is issued, it considered an analysis of the issues and reached a decision that sets forth all the factors that factored into its analysis. And those were not before the Court in Coitus Gaspard. And therefore, the Court determined, I guess you could say, that the Board should be able to find that the Board's determination in Coitus Gaspard was unreasonable based on the limited analysis that the Board conducted in that case. But since then, the Board has issued these two published decisions, which set out its analysis in quite a bit more detail. And in light of that, what was on, what appeared unreasonable on the record before is now, you know, provided with reasons. And so, therefore, is no longer, as you could say, unreasonable and now is entitled to this Court's deference. But the petitions say it's unreasonable because it doesn't carry out the policy of family reunification. Right. And I did address that briefly before. The problem is that in this case, in a case like Ms. Escobar's mother, the policy of family unity was not enshrined in the statute for her particular situation. Ms. Escobar's mother did become a lawful permanent resident in 1992, but Ms. Escobar was not able to become an LPR at that time. In contrast, there are many other provisions of the statute where aliens do gain lawful permanent resident status, where they are allowed to bring their children along. For example, asylum, that's one of the provisions where you're allowed to bring your children or spouse's derivatives with your application. And, in fact, that's the issue in the Vang case cited in Petitioner's brief. That's an asylum case. There are other provisions, too, where an alien can adjust and bring along his accompanying family members. But in this case, Ms. Escobar's mother was not allowed to do that. Therefore, there is some considered judgment by Congress that aliens in her particular situation would not be allowed to immigrate their children along with them for whatever reason. And I think, again, it's not entirely clear from the record, but it appears that Ms. Escobar's mother did adjust under the legalization provisions, and those do not apply for following children to be immigrated with the alien. So then, can we just get back to this? We skipped over the Gonzales DHS case pretty rapidly. But there, that panel of our court did some kind of rewriting of the prior opinion in order to get where it ultimately got. In fact, what it said was that in the prior opinion, which the BIA had then issued a subsequent opinion, to the contrary, we said, we re-described our prior opinion as saying that we did not foreclose the agency's interpretation of its statutory scheme. However, in the Cuevas-Gaspar-Escobar situation, we did address the agency's interpretation and foreclosed, as unreasonable, the Escobar situation. So isn't our case here, I mean, I don't know if I even agree with how that panel described the prior case, but that's how they described it, which is different from the situation here. Well, first of all, if you look at the prior case in Gonzales v. DHS v. Perez-Gonzales. The problem I'm having with your argument is that if you look at it, you might say, oh, yeah, they refused to apply show of indifference. However, you might interpret the case. What I'm saying to you is, however you might interpret the case, the case in Gonzales v. DHS, read it differently. And having read it differently, to not foreclose the interpretation, the later interpretation of the BIA, doesn't that make Gonzales v. DHS more reasonable? It's different from the situation presented here. I don't think we can go back to the prior case and say, oh, but what it really said was X, when the panel in the case that you're relying upon said Y. I see what you mean. I agree that it's a much more complicated situation in the Gonzales v. DHS case. In the original opinion, I just want to point out, in Perez-Gonzales, the Court did find the Board's interpretation unreasonable, and that's on page 788-89 of Perez-Gonzales. Right, but then the later opinion says, oh, that's not really what it's supposed to say. Yes, exactly. Well, that's not exactly the, I mean, I don't think that's exactly the appropriate analysis to be applied here. Well, in this case, the Board, as I said, the Board's original decision in Cuevas-Gaspar was not in a published analysis. It was just a very brief unpublished decision. Didn't our decision in Cuevas-Gaspar also rely upon congressional intent and the Board's application of the statute and regulations in a variety of ways? And it wasn't just relying on that one unpublished decision, although it was relevant. No, that's true, the Court did go beyond what the unpublished decision said to analyze the statutory language and the legislative history. But it did so without the guidance or the input of the Board, and the Court does realize that the Board is the first, you know, is the agency charged with making these decisions and making these interpretations of the immigration statute, and therefore should have the first chance at interpreting it to help the Court in analyzing the legislative history and the statutory language. And again, in this case, the Board, I mean, the Court in Cuevas-Gaspar specifically found that the statute was silent as to whether amputation would be allowed or not. So it did find that there was an opening here for interpretation. And I think the Court can say that in this case, the Board's interpretation fleshed out more completely with discussion of legislative history and so forth that was not available to the Court in the original go-around with Cuevas-Gaspar is reasonable. But I also want to, as I said at the beginning, I don't think the Court needs to reach the validity of Cuevas-Gaspar to rule in our favor in this case, because the provision at issue here is a different one than at issue in Cuevas-Gaspar. And the Court can say, okay, we'll allow amputation for A-2, but for A-1, it's a distinct provision, and we agree with the Board that amputation should not be allowed for that provision. And, in fact, that's what the Board held, even though it said in Escobar we disagree with Cuevas-Gaspar. It still said we're going to apply that in the Ninth, and we will distinguish it for this case. And I'll do it. The reasoning that Cuevas-Gaspar relied upon is equally applicable to both prongs of 1229A. Possibly some of it is, but there's statutory language here that is distinct. And, in particular, the language about lawfully admitted for permanent residence goes back to that definitional provision, 1101A, that talks about, that defines lawfully admitted for permanent residence as having the status of being admitted for permanent residence in compliance with immigration laws. So we're talking about a status here, which, as I said, is a legal characteristic that's conferred by the government when someone has complied with it. So doesn't the immigration treat people who have been admitted for lawful permanent residence status more favorably than people who are not admitted for any lawful status? That's true in some instances, but in this instance, for cancellation of removal for lawful permanent residence generally comes into play when an individual has been found deportable, and for lawful permanent residence to have been found deportable, they usually have to have committed a criminal offense. So cancellation of removal for lawful permanent residence is being applied to individuals who committed criminal offenses in the U.S. after being granted the privilege of residing here permanently. So a person who, let's take this person, Escobar, who lived here all her life, if she never attained permanent residence status, she would be governed under 1229B, and all she'd have to do is satisfy the 10 years continuous residency requirement, which she satisfies to be one-third eligible for and meet the other two requirements, that at least she'd be eligible for it. That actually is not correct. There are three other requirements for cancellation of removal for non-permanent residence. One of them is that they not have been convicted of a crime. No, I understand that there are other requirements, but she's met the residency requirement for that. Right, but she still would not be eligible for cancellation of removal. So you're comparing... That case hasn't been decided with respect to her. No, it hasn't been. I mean, I don't know if her crime has ever really been... I mean, there is a companion petition for the denial of the motion to reopen to consider whether the smuggling of the child was really, I don't know, was there intent or whatever else about that crime existed to satisfy that. But I'm just saying, you can't say that as a factual matter she would not be eligible. You can say what prong we know she met. We could say we don't know whether she would meet the other prongs or not for eligibility. But we can say that she, an alien in her position who is not an LPR, would not be treated more favorably. They would be treated less favorably, because it's most likely they would either not satisfy the criminal part or the criminal conviction. Without knowing what crime... I mean, some crimes have... There are crimes that are greater than others in seriousness and that the immigration laws don't treat as... They have gradations of how they treat various levels of crime. And again, if you can give me a second to refer to the statute, but also there's a good moral character requirement for non-permanent residents. And I think that she would not satisfy that because of the alien smuggling charge. Right, but do you know that? I don't know it now because I need to look at the statute. But I'm saying that I don't think that alien in her position who is not a lawful permanent resident would get better treatment because of the alien smuggling deportation charge. What you're comparing is basically lawful permanent resident aliens who are applying for cancellation of removal have committed criminal acts. Non-lawful permanent resident aliens applying for cancellation of removal in general have not committed criminal acts or ones as serious. What exactly did Ms. Escobar do? Wasn't she bringing a three-year-old child across the border to see her mother who was ill in the hospital? Yes, it was a very sympathetic situation, but the fact remains she did attempt to smuggle an alien into the country, and that is a very serious charge. It is a violation of immigration laws under which she got this privilege of being a lawful permanent resident. So again, in addition to her, I don't think she's being treated less favorably than a non-lawful permanent resident alien. In addition, because she did obtain lawful permanent residence, it's considered more serious when someone like that who was granted the privilege of residing in the country then goes ahead and violates the laws of our country. I mean, if they were granted citizenship and they committed a crime, a higher status, and they committed a crime, they'd be treated like every other United States citizen. And that being true even though they've been given the privilege of citizenship, isn't that more serious? But if they had been granted citizenship, it would have been after a period of time in the country as a lawful permanent resident. You can kind of say they were on probation, and they met probation by not doing anything untoward during that period. So basically, during her probation period when we said, okay, we're going to give you lawful permanent residence, she did go ahead and commit a violation. And so, unfortunately, the consequences of that are pretty serious. So again, I just want to point out that this case can be distinguished from Cuevas Gaspar because of the definition. The definition of lawfully admitted for permanent residence in 1101 requires the alien to have the status, which means they have to have complied with the statutory requirements for being a lawful permanent resident themselves. And this is consistent with the title of the statute and the legislative history, which requires an alien to have been himself admitted for lawful permanent residence to qualify. And I'm out of time, I see, so unless there are any further questions. I would just like to point out, as something that the court has already touched upon and has mentioned several times, that the purpose of the imputation and why it's important is for a very good public policy reason, and that is for family unification. It's important because in our particular facts of our case, this petitioner has resided in this country since she was five years old. The facts are not before the court, but I think the court must be wondering why she did not get her lawful permanent residence at the same time. There are many, many reasons why sometimes a parent and a child are not able to get their status at the same time. Oftentimes, the government bears some responsibility in the fact of why that subsequent child's petition is not granted in a timely matter. Unfortunately, that's what happened to Ms. Escobar. The petitioner is not prejudiced by that lack of government action, and she would be eligible for the cancellation of removal in this case. We think certainly that consistent with that public policy, with congressional intent and the other factors that I've previously mentioned for the court, it is a proper reading of the case law, of the statute, this court's precedent, and the BIA's prior precedent, and should find that imputation is appropriate. But imputation, you said it's a reading of the statute. The statute doesn't talk about imputation. Imputation was grafted onto the statute by the circuit, I think. Well, not only by the circuit, but also by the BIA in prior decisions discussing other areas where they would impute the intent of a parent to a minor. Correct. I don't have any further argument or comments. Any other questions? No? Thank you. Thank you very much, counsel. Escobar v. Mukasey. We've submitted a table for audit today.
judges: Farris, Wardlaw, Schwarzer